## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00314-CR-LENARD

**UNITED STATES OF AMERICA,**

**v.**

**RAUL E. ISRAEL,**

      Defendant.

_____/

## ORDER DENYING MOTION FOR ORDER REDUCING SENTENCE OR MODIFYING JUDGMENT TO ALLOW REMAINDER OF SENTENCE TO BE SERVED ON HOME CONFINEMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 432)

**THIS CAUSE** is before the Court on Defendant Raul E. Israel's Motion for Order Reducing Sentence or Modifying Judgment to Allow Remainder of Sentence to be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ("Motion," D.E. 432), filed through counsel on April 17, 2020.  The Government filed a Response on May 11, 2020, ("Response," D.E. 434), to which Defendant filed a Reply on May 12, 2020, ("Reply," D.E. 435).  The Court ordered supplemental briefing, (D.E. 436), and on May 20, 2020, Defendant, through counsel, filed a Supplemental Brief, (D.E. 437).  The Government filed a Response, ("Supplemental Response," D.E. 439), to which Defendant filed a Reply, ("Supplemental Reply," D.E. 444).  Defendant also responded pro se to the Court's request for supplemental briefing and filed additional materials with the Court. (D.E. 438.)  Upon review of the Motion, Response, Reply, supplemental materials, and the record, the Court finds as follows.

## I.     Background

After a jury trial, the Court adjudicated Defendant guilty of conspiracy to import cocaine and conspiracy to launder money. (D.E. 218.)  On November 13, 1996, the Court sentenced Defendant to 500 months' imprisonment on the drug charge and 240 months' imprisonment on the money laundering charge, to run concurrently. (D.E. 217.)  Defendant appealed and on February 6, 2001, the Eleventh Circuit affirmed the Court's Judgment, (D.E. 342); Mandate issued June 7, 2001, (id.).  Since then, Defendant has filed several motions seeking relief from Judgment or a reduction of sentence, all of which have been denied.  (See D.E. 366, 370, 375, 389, 392, 403, 405, 415, 423, 427.)  Defendant has also collaterally attacked his sentence on several occasions without success.  See Israel v. United States, Case No. 02-22919-Civ-Lenard (S.D. Fla. filed Oct. 1, 2020); Israel v. United States, Case No. 10-20641-Civ-Lenard (S.D. Fla. filed Mar. 3, 2010); Israel v. United States, Case No. 13-20349-Civ-Lenard (S.D. Fla. filed Jan. 23, 2013); Israel v. Warden, FCC Coleman – Medium, Case No. 5:14-cv-00507-WTH-PRL (M.D. Fla. filed Sept. 17, 2014); Israel v. United States, Case No. 17-23863-Civ-Lenard (S.D. Fla. filed Oct. 20, 2017).  He is currently incarcerated at the FCI-Miami, and according to BOP's website, is scheduled to be released November 26, 2030.

On April 17, 2020, Defendant filed the instant Motion seeking "compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the 'extraordinary and compelling reasons' presented by the COVID-19 pandemic." (D.E. 432 at 1.)

## II.     Legal Standard

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the "compassionate release" provision.  That statute provides, in relevant part:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
>> **(1)** in any case—
>>
>>> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> **(i)** extraordinary and compelling reasons warrant such a reduction;
>>>>
>>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (2019).[1]  Prior to the First Step Act, the United States Sentencing Commission promulgated a policy statement permitting courts to reduce a

---

[1]      Prior to the First Step Act, only the Director of the Bureau of Prisons could move the Court for a reduction of a prisoner's sentence under this provision.  See Cruz-Pagan v. Warden, FCC Coleman-Low, 486 F. App'x 77, 79 (11th Cir. 2012).  Section 603(b) of the First Step Act amended Section 3582(c)(1)(A) "to permit a defendant to seek compassionate release after fully exhausting administrative remedies for the failure of the Bureau of Prisons to bring a motion on behalf of the defendant, or 30 days after requesting the warden of the facility to bring such a motion."  United States v. Nasirun, Case No. 8:99-CR-367-T-27TBM, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

defendant's sentence if it determines that: (1) "[e]xtraordinary and compelling reasons warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The Sentencing Commission further provided the following Application Note regarding what may constitute "extraordinary and compelling circumstances":

1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant**.—

    **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    **(ii)** The defendant is—

        **(I)** suffering from a serious physical or medical condition,

        **(II)** suffering from a serious functional or cognitive impairment, or

        **(III)** experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    **(B) Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances**.—

    **(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    **(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    **(D) Other Reasons**.—As determined by the Director of the Bureau of Prisons,[2] there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 n.1 (emphasis added).   "In seeking a reduced sentence under this framework, the defendant 'bears the burden of establishing that compassionate release is warranted.'"   United States v. Rodriguez-Orejuela, __ F. Supp. 3d __, Case Number: 03-CR-20774-MORENO, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) (quoting United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013))).

---

    2       Although prior to the enactment of the First Step Act of 2018 only the Director of BOP could determine whether "other" extraordinary and compelling reason existed for compassionate release, the overwhelming majority of courts analyzing motions for compassionate release after the enactment of the First Step Act of 2018 find that courts can now determine whether "other" extraordinary and compelling reasons warrant compassionate release under U.S.S.G. § 1B1.13 n.1(D).   See, e.g., United States v. Rodriguez, Case No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); United States v. Urkevich, 2 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019), United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019); United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *6, 9 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, at *4 (S.D. Tex. June 17, 2019).

### III.   Discussion

Defendant argues that the Court should grant relief based on his "age (76 years old), medical conditions (heart attack resulting in open heart surgery), and his unique susceptibility to contracting the fatal disease while housed in a crowded facility with limited ability to take necessary self-protective measures such as isolating himself and regularly washing or sanitizing his hands."  (Id.)  He argues that the Court should waive Section 3582(c)(1)(A)'s exhaustion requirement because he is facing irreparable harm and exhaustion would be futile.  (Id. at 13-14.)   In this regard, Defendant asserts that he submitted his request for compassionate release to the Warden of his institution on March 31, 2020—less than thirty days before he filed the instant Motion—but he did not attach a copy of the request to this Motion.  (Id. at 17.)  Defendant also asserts that his wife wrote a letter to the Warden on March 27, 2020 stating that he could live with her if released, (id.); he attached a copy of that letter to the Motion, (D.E. 432-1).  Finally, Defendant argues that the Section 3553(a) factors warrant a reduction of sentence to time-served, or alternatively an order modifying his judgment to serve the remainder of his sentence on home confinement.  (Id. at 18.)

In its Response, the Government argues that the Court is without authority to grant Defendant's request for home confinement, as only the Bureau of Prisons ("BOP") has the authority to place a prisoner in home confinement.  (D.E. 434 at 1-2.)  It further argues that although the Court has the authority to reduce Defendant's sentence for "extraordinary and compelling reasons"—which may include consideration of a serious physical or medical condition or deteriorating physical or mental health because of the aging process, U.S.S.G.

§ 1B1.13 n.1—it is Defendant's burden to establish his right to a sentence reduction, and he has provided no medical records setting out his current health conditions. (Resp. at 3.) The Government further argues that Defendant has not shown that he is at an extreme risk from COVID-19 in BOP Custody but would be at significantly less risk if released from confinement. (Id.) In this regard, the Government argues that BOP has taken the pandemic very seriously and has implemented extensive procedures to control the spread of COVID-19 among the prison population. (Id.) Finally, the Government argues that Defendant failed to present any evidence showing that he exhausted administrative remedies, and the Court is without jurisdiction to consider a motion for compassionate release prior to exhaustion. (Id. at 4.) Accordingly, the Government argues that the Court should deny the Motion. (Id.)

In his Reply, Defendant argues that he exhausted administrative remedies because more than thirty days have lapsed since he requested the Warden of FCI-Miami to file a motion for compassionate release on Defendant's behalf. (D.E. 435 at 1.) Defendant further argues that the Court has the authority to modify his sentence to include home confinement. (Id. at 1-2 (citing United States v. Barbuto, 18-cr-80122-Middlebrooks, D.E. 314 (S.D. Fla. Apr. 28, 2020); United States v. Hernandez, 18-cr-20474-Altonaga, D.E. 42 (S.D. Fla. Apr. 2, 2020); United States v. Minor, 18-cr-80152-Middlebrooks, D.E. 35 (S.D. Fla. Apr. 17, 2020); United States v. Suarez, 18-cr-20175-Cooke, D.E. 180 (S.D. Fla. Arp. 20, 2020); United States v. Hernandez, 16-cr-20091-Williams, D.E. 561 (S.D. Fla. Apr. 3, 2020); United States v. Oreste, 14-cr-20349-Scola, D.E. 200 (S.D. Fla. Apr. 6, 2020)).) Defendant disagrees with the Government's assertion that BOP is taking the pandemic very

seriously, noting that BOP staff have filed an "Imminent Danger Report" with the Occupational Safety and Health Administration on the grounds that BOP is not following Centers for Disease Control ("CDC") guidelines and is not doing enough to curb the spread of the virus.  (Id. at 2.)  He argues that social distancing and good hygiene "are simply not possible while incarcerated[,]" and therefore he is necessarily at less of a risk if he released.  (Id. at 3.)  Defendant attaches to his Reply various medical records dated between February 2016 and January 2018 which, according to Defendant, "confirm that Mr. Israel's medical conditions—heart attacks, open heart surgeries, anemia, continued irregular heart readings—are on-going, very serious, and very real."  (Id. at 4 (citing D.E. 435-2).)  He argues that pursuant to CDC guidelines, persons with heart conditions are at high risk for fatal complications for COVID-19.  (Id. at 4 (citing Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), People at increased risk for severe illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus %2F2019-ncov%2Fneed-extra-precautions%2Fpeople-at-higher-risk.html).)

On May 13, 2020, the Court issued a Paperless Order directing Defendant to file on the docket a copy of the request for compassionate release he submitted the Warden of FCI-Miami.  (D.E. 436.)  The Court directed the Government to respond to (1) the Defendant's request to the Warden and (2) the medical records Defendant attached to his Reply brief.  (Id.)  The Court also permitted Defendant to reply to the Government's Response on these issues.  (Id.)

Defendant, through counsel, filed a Supplemental Brief in Further Support of his Motion.   (D.E. 437.)    Therein, counsel for Defendant indicates that Defendant "is attempting to mail counsel a copy of his request that he submitted to the Warden on March 31, 2020[,]" but to that point counsel had not received it.  (Id. at 1.)  However, on May 22, 2020, Defendant filed the request he submitted to the Warden of FCI-Miami pro se.  (D.E. 438.)

On May 29, 2020, Government filed its Supplemental Response, withdrawing its prior argument that Defendant failed to exhaust administrative remedies: "The United States is satisfied that the defendant submitted a proper application to the Warden of his Bureau of Prisons (BOP) institution more than 30 days ago, and has not received a response. This gives the court jurisdiction to consider his motion."   (D.E. 439 at 1.) However, it reasserted "its position that the court cannot order the BOP to place an inmate on home confinement as part of his prison sentence[,]" arguing that in the cases cited by Defendant, the Courts reduced the defendants' sentences to time served and ordered home confinement as a condition of supervised release.  (Id.)  The Government asserts that "[t]hat option is available in this case."   (Id.)   The Government also maintains that BOP is adequately addressing the pandemic.  (Id. 2-3.)  The Government further argues that the medical records Defendant submitted are so outdated that they are insufficient to carry his burden "of showing that he currently suffers from infirmities that make him so susceptible to severe effects from Covid-19 infection that it constitutes an extraordinary and compelling reason to release him."  (Id. at 2.)

> The defendant may be in the same condition today as then. He may be worse. He also may have improved with reasonable medical care. This court should not have to guess at what his current condition is; he has the responsibility to provide documentation of his current condition. He has failed to do so.

(Id.) Thus, the Government argues that although prison conditions may not be ideal "for controlling this very contagious disease[,]" and although Defendant's "physical condition is not good[,]" the compassionate release statute "was not intended to empty out the prison system in the event of a contagious epidemic. It is designated to apply only to inmates seeking relief under situations that are extraordinary and compelling as to them individually." (Id. at 3.) The Government argues that Defendant has not carried his burden of demonstrating that "his current condition is so poor that he qualifies for relief because of the possibility that he may become infected and be unable to recover if he remains in prison." (Id.)

Defendant, through counsel, filed a Supplemental Reply arguing that "[n]ew Department of Justice guidance directs prosecutors to concede that 'extraordinary and compelling' reasons exist where a defendant suffers from a documented medical condition identified by the Centers for Disease Control (CDC) that places him at higher risk from COVID-19[,]" (D.,E. 444 at 1 (citing United States v. Feucht, 11-cr-60025-Middlebrooks, D.E. 51 (S.D. Fla. May 26, 2020))), the CDC lists "[s]erious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension" as high-risk medical conditions, (id. (citing United States v. Firebaugh, Case No. 16-cr-20341-Ungaro, D.E. 43 (S.D. Fla. June 1, 2020)), and Defendant "has provided evidence to the Court, in the form of BOP records, that he suffers

from serious heart conditions, including heart failure, and hypertension[,]" (id. (citing D.E. 435-2)).   Defendant argues that "serious heart conditions, like heart failure and hypertension, are chronic conditions that do not go away," so the BOP records are not outdated.  (Id. at 1-2.)  He further argues that statistics show that the prison population is more susceptible to a COVID-19 infection than the general population.  (Id. at 2-4.)

    **a)**    **Exhaustion**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment" and may not be modified by a district court except in limited circumstances."  Dillon v. United States, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)[3]); see also United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003) ("Congress has allowed for limited exceptions to the rule of finality . . . .").  Specifically, a federal "court may not modify a term of imprisonment once it has been imposed except" in the three circumstances defined by Congress in 18 U.S.C. § 3582(c).  See United States v. Maiello, 805 F.3d 992, 999 (11th Cir. 2015) ("[A] court may only modify a sentence (once it is final) when limited exceptions apply.  18 U.S.C. § 3582(c).  That is, courts only have the authority to reduce a sentence which is part of a final judgment because Congress placed that authority in the hands of the judiciary in the first place."); United States v.

---

[3]    Section 3582(b) provides: "Notwithstanding the fact that a sentence to imprisonment can subsequently be--(1) modified pursuant to the provisions of subsection (c); (2) corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or (3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742; a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes."

Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010) ("The authority of a district court to modify an imprisonment sentence is narrowly limited by statute.").

Relevant here, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, authorizes a Court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Thus, Defendant is permitted to file a motion for reduction of sentence only after he has exhausted his administrative remedies. See Rodriguez-Orejuela, __ F. Supp. 3d __, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) ("Rodriguez-Orejuela moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which was amended by the First Step Act to allow defendants, like Rodriguez-Orejuela, to petition a court after first exhausting their administrative remedies with the BOP."); United States v. Milner, __ F. Supp. 3d __, Case No. 5:16-CR-32-5 (LAG-CHW), 2020 WL 2744088, at *2 (M.D. Ga. Apr. 20, 2020) ("Section 3582(c)(1)(A), therefore, sets out two requirements for a defendant to be entitled to relief: exhaustion of administrative remedies and extraordinary and compelling reasons warranting a sentence reduction."); United States v. Zywotko, __ F. Supp. 3d __, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020) ("[S]ince Defendant has failed to exhaust his administrative remedies, the Court does not possess authority to grant relief under § 3582(c)(1)(A)(i).").

To satisfy Section 3582(c)(1)(A)'s exhaustion requirement, a prisoner must first make a written request to the Warden of his institution that includes, at a minimum, the following information:

> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a).  The prisoner may file a motion under Section 3582(c)(1)(A) after either: (1) thirty days have lapsed since the Warden received the request; or (2) after exhausting all administrative rights to appeal BOP's decision not to file a motion on the prisoner's behalf, see 28 C.F.R. § 571.63—whichever is earlier.   18 U.S.C. § 3582(c)(1)(A).  In order to exhaust administrative appeals, a prisoner has 20 calendar days to appeal the Warden's decision to the Regional Director.  28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's decision, the prisoner is required to appeal to BOP's General Counsel within 30 calendar days of the Regional Director's response.  Id.

Section 3582(c)(1)(A)'s exhaustion requirement is mandatory.  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Here, the Government has withdrawn its argument that the Motion should be denied for failure to exhaust administrative remedies based on the fact that Defendant "submitted a proper application to the Warden of his Bureau of Prisons (BOP) institution more than 30 days ago, and has not received a response."  (See Supp. Resp. at 1.)  Although the

Government asserts that "[t]his gives the court jurisdiction to consider his motion[,]" the Court disagrees with the Government's legal conclusion.

The statute does not place a thirty-day waiting period on the Court's authority to entertain the motion; rather, it places a thirty-day waiting period on the prisoner's ability to file the motion on his own behalf.  See 18 U.S.C. § 3582(c)(1)(A) (stating that a Defendant may file a motion for compassionate release on his own behalf only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").  Here, Defendant submitted his request to the Warden on March 31, 2020.  (See D.E. 438 at 5.) However, he did not (1) exhaust his administrative rights to appeal the Warden's decision, or (2) wait thirty days from the date the Warden received his request before filing the instant Motion on April 17, 2020.  (D.E. 432.)  Accordingly, Defendant failed to satisfy the statutory exhaustion requirement.  See United States v. Montoya-Clavijo, Case No. 11-20809-Cr-Lenard, D.E. 177 (S.D. Fla. June 25, 2020) (finding that the defendant failed to satisfy the statutory exhaustion requirement because he filed his motion before thirty days had lapsed since the Warden of his institution received his request); United States v. Claro, Case No. 09-20922-Cr-Lenard, D.E. 158 (S.D. Fla. June 10, 2020) (finding that the defendant failed to satisfy the statutory exhaustion requirement because he filed his motion twenty days after the Warden of his institution received his request).

Consequently, the Motion is procedurally defective.  See United States v. Montanez, Case # 15-CR-122-FPG, 2020 WL 2183093, at *1-11 (W.D.N.Y. May 5, 2020) (denying

motion for compassionate release without prejudice as "procedurally defective" because it was filed less than thirty days after the defendant requested the warden to file a motion for compassionate release on his behalf, and providing a very thorough analysis as to why Section 3582(c)(1)(A)'s statutory exhaustion requirement, and in particular the thirty-day lapse requirement, is mandatory and must be enforced); United States v. Gonzalez, No. 3:17-cr-00062 (JAM), 2020 WL 2079110, at *4-7 (D. Conn. Apr. 30, 2020) (same); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *7 (W.D.N.Y. Apr. 24, 2020) (same); United States v. Vence-Small, __ F. Supp. 3d __, 2020 WL 1921590, at *4-6 (D. Conn. Apr. 20, 2020) (same); see also Montoya-Clavijo, Case No. 11-20809-Cr-Lenard, D.E. 177 (S.D. Fla. June 25, 2020) (same); Claro, Case No. 09-20922-Cr-Lenard, D.E. 158 (S.D. Fla. June 10, 2020) (same).

To the extent that Defendant argues that the Court should waive the exhaustion requirement, (see Mot. at 13-17), the Court finds that it is without authority to do so. Section 3582(c)(1)(A)'s exhaustion requirement is mandatory, Raia, 954 F.3d at 597; "neither the statute nor case law creates any special exception to the mandatory language that the BOP essentially must be given at least thirty days to consider any request for compassionate release." United States v. Winner, __ F. Supp. 3d __, CR 117-034, 2020 WL 2124594, at *1 (S.D. Ga. Apr. 24, 2020) (citing Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016)).[4]

---

[4]     In Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, the Supreme Court analyzed the exhaustion requirement under the Prison Litigation Reform Act of 1995 ("PLRA"), which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

This waiting period is appropriate because the BOP is better positioned to assess an individual inmate's present circumstances.  In the context of the COVID-19 pandemic, where the BOP has implemented policies and proactive measures to protect the health and safety of its prisons' populations, and where the Attorney General has directed the BOP to "immediately maximize appropriate transfers to home confinement . . . where COVID-19 is materially affecting operations," the expertise and informed assessment of the BOP should not be heedlessly omitted from the process.

Id. (citing Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.  And given the Attorney General's directive that BOP 'prioritize the use of [its] various statutory authorities to grant home

---

facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  The Court noted that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  Ross, 136 S. Ct. at 1857.  However, the Court noted that "the PLRA contains its own, textual exception to mandatory exhaustion.  Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  Id. at 1858.  The Eleventh Circuit has observed that

> [t]he Supreme Court has identified at least three scenarios "in which an administrative remedy, though officially on the books, is not capable of use to obtain relief": (1) where officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," such that the remedy operates as "a simple dead end"; (2) where the remedy is essentially "unknowable" such that no ordinary prisoner can understand what it requires; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1859–60 (quotation omitted).

Montalban v. Doe, __ F. App'x __, 2020 WL 704911, at *4 (11th Cir. 2020) (citing Ross, 136 S. Ct. at 1858).

However, the mandatory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) does not contain a similar textual exception hinging exhaustion on the "availability" of administrative remedies.  Rather, it simply (and clearly) requires that a defendant "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait thirty days after the Warden receives a request before a defendant can file a motion for compassionate release on his own behalf.  18 U.S.C. § 3582(c)(1)(A) (emphases added).

16

confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic,' we anticipate that the statutory requirement will be speedily dispatched in cases like this one.") (quoting Memo. from Att'y Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), available at https://www.justice.gov/file/1262731/download (last visited May 13, 2020))).

To the extent that Defendant argues that exhaustion would have been futile, the argument fails as a matter of law.  See Richardson v. Reno, 162 F.3d 1338, 1374 (11th Cir. 1998), judgment vacated on other grounds, 526 U.S. 1142 (1999), reaff'd and reinstated, 180 F.3d 1311 (11th Cir. 1999), overruled on other grounds by I.N.S. v. St. Cyr, 533 U.S. 289, 312 (2001).   In Richardson, the Eleventh Circuit held that "statutorily created exhaustion requirements bind the parties and the courts.   When a statute requires exhaustion, a petitioner's failure to do so deprives [the] Court of jurisdiction.  Importantly, mandatory statutory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply due to futility."  Id. (emphasis added) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  See also Karam v. U.S. Citizenship & Immigration Servs., 373 F. App'x 956, 958 (11th Cir. 2010) (same); Jaimes v. United States, 168 F. App'x 356, 359 n.4 (11th Cir. 2006) (same); Hicks v. Jordan, 165 F. App'x 797, 799 n.2 (11th Cir. 2006) (same); Gallo Cattle Co. v. U.S. Dep't of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998) ("[W]hile judicially-created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court.").  Accordingly, the Court denies Defendant's request to waive the exhaustion requirement.

17

Because Defendant failed to exhaust his administrative remedies, the Court is without authority to consider the Motion and need not analyze whether Defendant would otherwise qualify for a sentence reduction under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13 n.1.  See United States v. Gray, Criminal Action No. 2:01-00007-KD-C, 2020 WL 2132948, at *6 (S.D. Ala. May 4, 2020) (finding that because the defendant failed to exhaust her administrative remedies "the Court lacks authority to consider her motion"); Guzman v. United States, No.: 3:10-CR-161-TAV-DCP, No.: 3:15-cv-57-TAV, 2019 WL 1966106, at *2 (E.D. Tenn. May 2, 2019) (finding that the court "lacks statutory authorization to modify defendant's sentence under § 3582(c)(1)(A)" where the defendant did not establish exhaustion of administrative remedies). see also United States v. Estrada Elias, Criminal Action No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019) ("The First Step Act of 2018 expands the criteria for compassionate release and gives defendants the opportunity to appeal the Bureau of Prisons' denial of compassionate release.  Pub. L. No. 115-391, § 603(b).  However, it does not alter the requirement that prisoners must first exhaust administrative remedies before seeking judicial relief.").

However, even assuming arguendo that Defendant did exhaust his administrative remedies, or assuming arguendo that the Government waived the exhaustion requirement by withdrawing its argument that the Motion should be denied for failure to exhaust administrative remedies, the Motion fails on the merits for the reasons discussed in the next section.[5]  See United States v. Park, __ F. Supp. 3d __, 2020 WL 1970603, at *2 (S.D.N.Y.

---

[5]      For present purposes only, the Court assumes without deciding that the Government has the ability to waive the exhaustion requirement.  In this regard, the Court notes that some courts

2020) (proceeding to the merits of a motion for compassionate release where "the Government has agreed to waive exhaustion").

**b)    Merits**

Assuming arguendo that Defendant did exhaust his administrative remedies or that the Government waived the exhaustion requirement, (see supra Note 5), the Motion fails on the merits.  First, to the extent that Defendant seeks release to home confinement, the Court is without authority to grant the requested relief.  Pursuant to 18 U.S.C. § 3621(b), it is the Bureau of Prisons, not the district court, that designates a prisoner's place of

---

have found that Section 3582(c)(1)(A)'s exhaustion requirement is a "claim processing" rule subject to waiver by the Government, while other courts have found that exhaustion is a jurisdictional prerequisite not subject to waiver.  Compare United States v. McIndoo, __ F. Supp. 3d __, 1:15-CR-00142 EAW, 2020 WL 2201970, at *6 (W.D.N.Y. May 6, 2020) (finding that Section 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional prerequisite, but rather a claim-processing rule that must be enforced if raised, but which may be waived by the Government or forfeited by the Government) (citations omitted), with United States v. Johnson, __ F. Supp. 3d __, 2020 WL 1663360, at *2-3 (D. Md. Apr. 3, 2020) (finding that Section 3582(c)(1)(A)'s exhaustion requirement is "jurisdictional in nature" and not subject to judicial waiver).  According to the Johnson court, the Fifth, Ninth, and Tenth Circuits have concluded that Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, 2020 WL 1663360, at *4 (citing United States v. Garcia, 606 F.3d 209, 212 n.5 (5th Cir. 2010); United States v. Spears, 824 F.3d 908, 917 (9th Cir. 2016); United States v. McGaughy, 670 F.3d 1149, 1158 (10th Cir. 2012), while the Seventh Circuit has found that it is not jurisdictional, id. (citing United States v. Taylor, 778 F.3d 667, 671 (7th Cir. 2015)).

It does not appear that the Eleventh Circuit has addressed the issue.  However, its opinion in Richardson suggests that Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and not subject to waiver by the Court or the Government.  162 F.3d at 1374.  As discussed above, in Richardson, the Eleventh Circuit held that "statutorily created exhaustion requirements bind the parties and the courts.  When a statute requires exhaustion, a petitioner's failure to do so deprives [the] Court of jurisdiction."  Id.  The Court further observed that "mandatory statutory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply due to futility."  Id. (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975).  Thus, while Richardson found that the PLRA's exhaustion requirement was not subject to judicial waiver based on a finding of futility, it did not address whether it was subject to waiver by the Government.  However, it's statement that statutory exhaustion requirements are jurisdictional would appear to require a finding that Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and cannot be waived by the Court or the Government.

imprisonment.  Pursuant to 18 U.S.C. § 3624(c)(2), it is BOP, not the district court, that has the authority "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  See United States v. Campbell, No. 3:12-CR-24 (CAR), 2014 WL 12911957, at *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP . . . .").  Although Section 12003(b)(2) of the CARES Act expanded the time that BOP can place an inmate in home confinement during the COVID-19 pandemic, see Pub. L. No. 116-136, 134 Stat. 281, § 12003(b)(2), it did not grant district courts the authority to order home confinement.  See United States v. Daniels, CASE NO. 4:08-CR-0464-SLB, 2020 WL 1938973, at *1-2 (N.D. Ala. Apr. 22, 2020); United States v. Read-Forbes, CRIMINAL ACTION No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020).

Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release.  See, e.g., United States v. Ben-Yhwh, __ F. Supp. 3d __, 2020 WL 1874125, at *7 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and ordering home confinement as a condition of supervised release); United States v. Dimasi, 220 F. Supp. 3d 173, 198 (D. Mass. 2016) (same).  The Government concedes that "[t]hat option is available in this case."  (See Supp. Resp. at 1.)  In fact, this is precisely the action the Court took in all of the cases Defendant cited in support of his argument that the Court could release him to home confinement.  (See Reply at 1-2 (citing United States v. Barbuto,

18-cr-80122-Middlebrooks, D.E. 314 (S.D. Fla. Apr. 28, 2020); United States v. Hernandez, 18-cr-20474-Altonaga, D.E. 42 (S.D. Fla. Apr. 2, 2020); United States v. Minor, 18-cr-80152-Middlebrooks, D.E. 35 (S.D. Fla. Apr. 17, 2020); United States v. Suarez, 18-cr-20175-Cooke, D.E. 180 (S.D. Fla. Arp. 20, 2020); United States v. Hernandez, 16-cr-20091-Williams, D.E. 561 (S.D. Fla. Apr. 3, 2020); United States v. Oreste, 14-cr-20349-Scola, D.E. 200 (S.D. Fla. Apr. 6, 2020)).)  However, for the reasons that follow, the Court finds that Defendant has not established extraordinary and compelling circumstances warranting relief.

First, the Court agrees with the Government that Defendant has failed to establish that his current health condition is sufficiently serious to warrant compassionate release. The most recent health records Defendant filed with the Court are dated between December 2017 and January 2018.  (See D.E. 435-2.)  On December 15, 2017, it appears he was diagnosed with acute myocardial ischemia, which "occurs when blood flow to your heart is reduced, preventing the heart muscle from receiving enough oxygen[,]" and is "usually the result of a partial or complete blockage of your heart's arteries[.]"  Mayo Clinic, Myocardial ischemia, available at https://www.mayoclinic.org/diseases-conditions/myocardial-ischemia/symptoms-causes/syc-20375417 (last visited July 9, 2020).  However, according to his Motion, in January 2018, Defendant underwent open heart surgery, (Mot. at 2), so it is unclear whether he is still suffering from myocardial ischemia.

In his discharge papers from January 9, 2018, the only "active" problem listed is "anemia," (D.E. 435-2 at 5), which "is a condition in which you lack enough healthy red

blood cells to carry adequate oxygen to your body's tissue." Mayo Clinic, Anemia, available at https://www.mayoclinic.org/diseases-conditions/anemia/symptoms-causes/syc-20351360 (last visited July 9, 2020). Anemia does not appear to be on the list of medical conditions that cause an increased risk for COVID-19 infections. See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 9, 2020).

On January 15, 2018, Defendant was diagnosed with "failure to thrive," (D.E. 435-2 at 8), which is "a state of decline that is multifactorial and may be caused by chronic concurrent diseases and functional impairments. Manifestations of this condition include weight loss, decreased appetite, poor nutrition, and inactivity." American Family Physician, Geriatric Failure to Thrive, available at https://www.aafp.org/afp/2004/0715/p343.html (last visited July 9, 2020). Failure to thrive does not appear to be on the list of medical conditions that cause an increased risk for COVID-19 infections. See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F

F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 9, 2020).

On January 21, 2018, Defendant was diagnosed with "incontinence, confusion, [and] unstable gait." (D.E. 485-2 at 9.) None of these conditions appear to be on the list of medical conditions that cause an increased risk for COVID-19 infections. See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 9, 2020).

Although it is undisputed that Defendant had a history of heart problems, and "serious heart conditions" do appear on the CDC's list of conditions that cause an increased risk for COVID-19 infections, see id., the evidence before the Court is simply insufficient to conclude that Defendant's current health condition constitutes an extraordinary and compelling reason for compassionate release under U.S.S.G. § 1B1.13 Application Note 1(A) ("Medical Condition of the Defendant"). Defendant has provided no evidence that any of his conditions constitute a "terminal illness" as that term is defined in the Application Note, or that he suffers from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A). Thus,

the Court finds that Defendant has failed to establish an extraordinary and compelling reason warranting a sentence reduction under U.S.S.G. § 1B1.13 n.1(A).

The Court further finds that under the circumstances of this case, the combination of Defendant's history of heart conditions and the COVID-19 pandemic does not present an "other" extraordinary and compelling reason under U.S.S.G. § 1B1.13 n.1(D).  First, Defendant has not shown that COVID-19 presents a major threat at FCI-Miami.  BOP has implemented an action plan to mitigate the spread of COVID-19.  See Federal Bureau of Prisons, BOP Implementing Modified Operations, available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 13, 2020).  It appears that BOP's action plan has been fairly successful at FCI-Miami: according to BOP's website, only four staff members and just sixteen inmates out of a total of 998 at FCI-Miami have tested positive for COVID-19—a rate of less than 2%—with zero deaths.  See Federal Bureau of Prisons, COVID-19 Cases, Miami FCI, available at https://www.bop.gov/coronavirus/ (last visited July 9, 2020).  Defendant has presented no evidence that BOP is mismanaging its response to COVID-19 at FCI-Miami that may warrant a finding that compassionate release is merited.  See United States v. Beck, 425 F. Supp. 573, 581-82 (M.D.N.C. 2019) (finding that BOP's mismanagement of prisoner's breast cancer constituted extraordinary and compelling reason for sentence reduction).  "'General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.'"  United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D.

Fla. Mar. 27, 2020) (quoting <u>United States v. Eberhart</u>, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020)).  For these reasons, the Court finds that Defendant's history of heart conditions coupled with the COVID-19 pandemic does not does not present an extraordinary and compelling reason to reduce Defendant's sentence.[6] <u>See</u> <u>Rodriguez-Orejuela</u>, __ F. Supp. 3d __, 2020 WL 2050434, at *8 (denying compassionate release because, inter alia, there were no confirmed cases of COVID-19 at the defendant's institution).

## IV.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Order Reducing Sentence or Modifying Judgment to Allow Remainder of Sentence to be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 432) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of July, 2020.

JOAN A. LENARD
**UNITED STATES DISTRICT JUDGE**

---

[6]    Because Defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not consider the Section 3553(a) factors.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A) (providing that a court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--(i) extraordinary and compelling reasons warrant such a reduction").