UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-00314-CR-LENARD

**UNITED STATES OF AMERICA,**

v.

**RAUL E. ISRAEL,**

Defendant.
_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE (D.E. 448)

**THIS CAUSE** is before the Court on Defendant Raul Israel's Renewed Motion for Compassionate Release Based on New Evidence and Records; or, in the Alternative, his Second Motion for Compassionate Release; and his Unopposed Motion for Expedited Briefing, ("Renewed Motion," D.E. 448), filed July 23, 2020. After the Court sua sponte expedited the briefing schedule, (D.E. 450), the Government filed a Response on July 27, 2020, ("Response," D.E. 451), to which Defendant filed a Reply on July 27, 2020, ("Reply," D.E. 452). In response to a series of Court orders, (D.E. 453, 455, 458), the Parties filed several Supplemental Briefs. (D.E. 454, 456, 457, 459.) Upon review of the Motion, Response, Reply, Supplemental Briefs, and the record, the Court finds as follows.

**I.    Background**

After a jury trial, the Court adjudicated Defendant guilty of conspiracy to import cocaine and conspiracy to launder money. (D.E. 218.) On November 14, 1996, the Court sentenced Defendant to 500 months' imprisonment on the drug charge and 240 months'

imprisonment on the money laundering charge, to run concurrently. (D.E. 217.) Defendant appealed and on February 6, 2001, the Eleventh Circuit affirmed the Court's Judgment, (D.E. 342); Mandate issued June 7, 2001, (id.). Defendant is currently incarcerated at the FCI-Miami, and according to BOP's website, is scheduled to be released November 26, 2030.

On April 17, 2020, Defendant filed a Motion seeking "compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the 'extraordinary and compelling reasons' presented by the COVID-19 pandemic" in light of his age (76) and medical conditions. (D.E. 432 at 1.) On July 10, 2020, the Court entered an Order denying Defendant's Motion for Compassionate Release. (D.E. 445.) First, the Court found that Defendant had failed to properly exhaust his administrative remedies because although he had presented evidence that he requested the Warden of his institution to request a sentence reduction on his behalf, "he did not (1) exhaust his administrative rights to appeal the Warden's decision, or (2) wait thirty days from the date the Warden received his request before filing the instant Motion on April 17, 2020." (Id. at 14.) The Court further found that even assuming arguendo that Defendant complied with the statutory exhaustion requirement, the Motion failed on the merits because Defendant "failed to establish that his current health condition is sufficiently serious to warrant compassionate release" under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. 1B1.13 n.1(A). (Id. at 21; see also id. at 23 ("[T]he evidence before the Court is simply insufficient to conclude that Defendant's current health condition constitutes an extraordinary and compelling reason for compassionate release under U.S.S.G. § 1B1.13 Application Note 1(A) ('Medical Condition of the Defendant').") The Court further found

that "under the circumstances of this case, the combination of Defendant's history of heart conditions and the COVID-19 pandemic does not present an 'other' extraordinary and compelling reason under U.S.S.G. § 1B1.13 n.1(D)."[1] (Id. at 24.) The Court found, for instance, that "Defendant has not shown that COVID-19 presents a major threat at FCI-Miami." (Id.)

On July 17, 2020, Defendant filed an Unopposed Motion for Release of Medical Records. (D.E. 446.) On July 20, 2020, the Court granted the Motion for Release of Medical Records, ordering FCI Miami to produce Defendant's medical records from July 1, 2018 to July 17, 2020 to defense counsel. (D.E. 447.)

On July 23, 2020, Defendant filed the instant Renewed Motion for Compassionate Release. (D.E. 448.) Therein, Defendant argued that compassionate release is warranted because: (1) he is currently infected with COVID-19, (id. at 1); (2) BOP has produced Defendant's most recent medical records which show that he is also currently suffering from hyperlipidemia, hypertension, pneumonia, and obesity, "most of which are additional CDC increased risk factors, and were not previously known to the undersigned, and therefore, not previously presented to this Court;" (id.); and (3) the COVID-19 pandemic is "ripping through FCI Miami, which has reported 106 cases as of July 21, 2020[,]" (id. at 1-2). Defendant has provided a sworn statement from his ex-wife, Diana Israel, stating

---

[1] The medical records Defendant filed with the Court were dated between December 2017 and January 2018. (See D.E. 445 at 21 (citing D.E. 435-2).) The records indicated that in January 2018 Defendant underwent open heart surgery. (See id.) In his discharge papers from January 9, 2018, the only "active" problem listed is "anemia." (Id.) The Court observed that, at that time, "Anemia [did] not appear to be on the [CDC's] list of medical conditions that cause an increased risk for COVID-19 infections." (Id. at 22 (citation omitted).)

that Defendant is invited to live with her if released, and that she is "willing and able, mentally, physically, and financially, to assume responsibility for [Defendant] and his medical conditions, including COVID-19." (D.E. 454-2.)

The Government opposes the Renewed Motion for Compassionate Release. (See D.E. 451.) However, it states in its Response that it "has no reason to believe the defendant poses any danger to the safety of the community at this time," and acknowledges that there are "countervailing considerations" for the Court to consider. (Id. at 3.) It further makes a recommendation for a follow-up report, leaving it to the Court to make findings, and stating that it would not object to release. (Id.)

After Defendant filed a Reply, (D.E. 452), the Court ordered supplemental briefing. (D.E. 453), followed by a Supplemental Order for Supplemental Briefing, (D.E. 455). On July 29, 2020, Defendant filed a self-styled "Court-Ordered Reply" stating:

> on July 28, 2020, AUSA Frank Tamen advised that he was just informed by BOP staff that: (i) on the morning of July 28, 2020, Mr. Israel had an abnormal chest x-ray; (ii) it is suspected, but not confirmed, that Mr. Israel has developed pneumonia; (and iii) Mr. Israel is not being moved to a hospital at this time. As Mr. Israel is not being moved to a hospital, his position does not change that in conjunction with BOP protocol, his motion for Compassionate Release be granted.

(D.E. 457 at 1.) The Court thereafter ordered the Government to respond to the statements made in Defendant's Court-Ordered Reply. (D.E. 458.) On July 29, 2020, the Government filed a response, advising that "due to a running nose and sneezing, a chest x-ray taken which showed an abnormal result, diagnosed as COVID-19 related pneumonia." (D.E. 459.) The Government states that Defendant is in "stable condition," but that if his

4

"condition deteriorates or otherwise warrants removal from the FCI isolation unit, he will be transferred to a local hospital." (Id. at 2.)

## II.     Legal Standard

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the "compassionate release" provision. That statute provides, in relevant part:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
>   **(1)** in any case—
>
>   **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   **(i)** extraordinary and compelling reasons warrant such a reduction;
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (2019).[2]  Prior to the First Step Act, the United States Sentencing Commission promulgated a policy statement permitting courts to reduce a

---

[2]     Prior to the First Step Act, only the Director of the Bureau of Prisons could move the Court for a reduction of a prisoner's sentence under this provision. See Cruz-Pagan v. Warden, FCC Coleman-Low, 486 F. App'x 77, 79 (11th Cir. 2012). Section 603(b) of the First Step Act amended Section 3582(c)(1)(A) "to permit a defendant to seek compassionate release after fully exhausting administrative remedies for the failure of the Bureau of Prisons to bring a motion on

defendant's sentence if it determines that: (1) "[e]xtraordinary and compelling reasons warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The Sentencing Commission further provided the following Application Note regarding what may constitute "extraordinary and compelling circumstances":

1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant**.—

   **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   **(ii)** The defendant is—

   **(I)** suffering from a serious physical or medical condition,

   **(II)** suffering from a serious functional or cognitive impairment, or

   **(III)** experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

behalf of the defendant, or 30 days after requesting the warden of the facility to bring such a motion." United States v. Nasirun, Case No. 8:99-CR-367-T-27TBM, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

>**(B) Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>**(C) Family Circumstances**.—
>
>>**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>>**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>**(D) Other Reasons**.—As determined by the Director of the Bureau of Prisons,[3] there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 n.1 (emphasis added). "In seeking a reduced sentence under this framework, the defendant 'bears the burden of establishing that compassionate release is warranted.'" United States v. Rodriguez-Orejuela, __ F. Supp. 3d __, Case Number: 03-CR-20774-MORENO, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) (quoting United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013))).

---

[3] Although prior to the enactment of the First Step Act of 2018 only the Director of BOP could determine whether "other" extraordinary and compelling reason existed for compassionate release, the overwhelming majority of courts analyzing motions for compassionate release after the enactment of the First Step Act of 2018 find that courts can now determine whether "other" extraordinary and compelling reasons warrant compassionate release under U.S.S.G. § 1B1.13 n.1(D). See, e.g., United States v. Rodriguez, Case No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); United States v. Urkevich, 2 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019), United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019); United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *6, 9 (M.D.N.C. June 28, 2019); United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019).

### III.  Discussion

The Court finds that Defendant has (1) properly exhausted administrative remedies, and (2) established extraordinary and compelling reasons for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13, based on Defendant's advanced age (he is 76 years' old) and his current health ailments—including COVID-19 and COVID-19-related pneumonia—which makes him particularly vulnerable to complications from COVID-19.  The Court further finds that the Section 3553(a) factors support a sentence reduction.

### IV.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendant's Renewed Motion for Compassionate Release Based on New Evidence and Records (D.E. 448) is **GRANTED**;

2.  Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant Raul Israel's term of imprisonment is hereby **REDUCED** to **TIME-SERVED** to be followed by a five-year term of supervised release with all standard conditions of supervised release previously imposed, as reflected in the Judgment of November 14, 1996 (D.E. 218), to remain in full force and effect, and with the following additional special conditions:

    a)  **Home Detention with Electronic Monitoring**: Defendant shall participate in the Home Detention for a period of **twelve months**. Upon release, the defendant shall report for supervision by telephone and await further instructions from the probation office.  Defendant

shall complete a period of isolation of at least 10 days and provide a negative COVID-19 test result before reporting in person, to ensure the safety of the community, as well as court/probation staff. Defendant's period of home detention will be monitored by voice recognition until he recovers from COVID-19. Immediately upon testing negative for COVID-19, the probation office shall begin monitoring the remainder of the home detention period through electronic monitoring.

During home detention, Defendant shall remain at his place of residence except for employment and other activities approved in advance: work, medical appointments, church, synagogue, or other places of worship, and provide the U.S. Probation Officer with all requested documentation. Defendant shall maintain a telephone at his place of residence without "call forwarding," "call waiting," a modem, "caller ID," or "call back/call block" services for the above period. Defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer.  Defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

b) **Permissible Search**: Defendant shall submit to a search of his person or property conducted in a reasonable manner and at a reasonable time by the U.S. Probation Officer;

    **c)**    **Travel Restrictions**: Defendant shall not travel outside the Southern District of Florida without permission of the Court, and shall not be involved with the transport of any items or products by land, air, or sea;

**3.**    The Federal Bureau of Prisons is directed to release Defendant forthwith. Defendant and his family are responsible for arranging transportation to a hospital or other medical facility or his ex-wife's residence and, once released, must proceed directly there; and

**4.**    Defendant must report via telephone to the United States Probation Office at 305-523-5403 within 48 hours of his release.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of July, 2020.

*[Signature: Joan A. Lenard]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**